UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BROADCAST MUSIC, INC.; NU SHOOZ
ORCHESTRA, LLC; MJ PUBLISHING
TRUST d/b/a MIJAC MUSIC; SONGS OF
UNIVERSAL, INC.,
                Plaintiffs,

     -against-                                     13-CV-2255 (KMW)
                                                     OPINION & ORDER

PAMDH ENTERPRISES, INC. d/b/a
KATRA; DAVID CASEY; and SHERI
LYNN WILSON, each individually,

               Defendants.
------------------------------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

      Plaintiffs Broadcast Music, Inc. ("BMI"), Nu Shooz Orchestra, LLC ("Nu Shooz"), MJ Publishing Trust d/b/a Mijac Music ("Mijac Music"), and Songs of Universal, Inc. ("Songs of Universal") (collectively, "Plaintiffs") brought this suit against defendants PAMDH Enterprises, Inc. d/b/a Katra, David Casey, and Sheri Lynn Wilson (collectively, "Defendants") for copyright infringement. Defendants have failed to answer or otherwise appear in this action. Plaintiffs now move for default judgment against Defendants, seeking damages, injunctive relief, and costs.

      For the reasons stated below, the Court GRANTS Plaintiffs' motion and enters default judgment against Defendants. The Court awards Plaintiffs damages and costs, but not injunctive relief.

### I.    FACTUAL BACKGROUND

      The following summary is drawn from Plaintiffs' Complaint, [Dkt. No. 1], and the exhibits and declarations attached to Plaintiffs' motion for default judgment, [Dkt. No. 7].

      BMI is a non-profit corporation that acquires the non-exclusive public performance rights of musical works from copyright owners and then licenses the public performance of such works on their behalf. (Compl. ¶ 3; Lloyd Decl. ¶¶ 2–3 [Dkt. No. 8]); *see also* 17 U.S.C. § 101 (listing BMI as

1

an example of a "performing rights society," which "is an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works"). BMI grants to music users the right to publicly perform any of the approximately 7.5 million copyrighted musical works in its repertoire by means of a blanket license agreement. (Compl. ¶ 3; Lloyd Decl. ¶¶ 2, 5). The Complaint in this case alleges copyright infringement of three musical works that are licensed by BMI and owned by the other plaintiffs—Nu Shooz, Mijac Music, and Songs of Universal. (Compl. ¶¶ 3–7; Lloyd Decl. ¶ 4).

Defendants own and operate Katra, an establishment located at 217 Bowery in New York City. (Compl. ¶¶ 8–14). BMI learned that Katra was offering musical entertainment without a license from BMI or permission from the copyright owners whose music was being performed. (Stevens Decl. ¶ 3 [Dkt. No. 10]). Between August 2011 and August 2012, BMI repeatedly informed Defendants of the need to obtain permission for public performances of copyrighted music. (Stevens Decl. ¶¶ 3, 5–9). BMI sent twenty-three letters to Katra, telephoned Katra on thirty-four occasions, and visited in-person three times. (Stevens Decl. ¶ 9, Ex. B). Defendants, however, failed to enter into a license agreement with BMI and continued to offer unauthorized public performances of BMI-licensed music. (Stevens Decl. ¶ 10). BMI sent an investigator to visit Katra on June 8 and June 22, 2012, and to make audio recordings and written reports of music being publicly performed. (Stevens Decl. ¶ 11).

On June 8, 2012, Defendants caused to be publicly performed at Katra the songs "I Can't Wait," for which Nu Shooz is the copyright owner, and "Cutie Pie," for which Songs of Universal is the copyright owner. (Compl. ¶ 21, Schedule; Stevens Decl., Ex. A). On June 22, 2012, Defendants caused to be publicly performed at Katra the song "Wanna Be Startin' Somethin'," for which Mijac

Music is the copyright owner.[1] (Compl. ¶ 21, Schedule; Stevens Decl., Ex. A). BMI was (and still is) the licensor of the public performance rights of these three musical works, (Compl. ¶ 20), and the other plaintiffs in this case have granted BMI the right to maintain actions for infringement of the public performance rights in their musical works, (Lloyd Decl. ¶ 5). Plaintiffs state that Defendants continue to publicly perform music licensed by BMI at Katra and that BMI has not received an executed license from Defendants. (Compl. ¶ 22; Stevens Decl. ¶ 16).

## II.   DISCUSSION

Defendants were served with a copy of the summons and complaint in this case in early May 2013. (*See* Affs. of Service [Dkt. Nos. 3–5]). To date, Defendants have failed to answer or otherwise appear in this action. Plaintiffs obtained a certificate of default against Defendants, [Dkt. No. 13], and Plaintiffs now seek a default judgment. Plaintiffs' motion for default judgment was served on Defendants by mail. (*See* Certificate of Service, attached to Mot. for Default Judgment).

### A.  Liability

"[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In the event of a default, a court is thus "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A district court, however, "need not agree that the alleged facts constitute a valid cause of action," *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); rather, the Second Circuit has "suggested that, prior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law,'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (quoting *Finkel*, 577 F.3d at 84).

---

[1] The Complaint's Schedule incorrectly states that this song was played on June 23, 2012, (*see* Compl., Schedule); Plaintiffs' investigator's report states that she visited Katra and recorded one of the songs at issue on June 22, 2012, (*see* Stevens Decl., Ex. A).

"Accordingly, the Court must determine whether the well pleaded allegations in the Complaint, admitted by Defendants on this motion, are sufficient to establish liability for the claimed causes of action." *Rolex Watch U.S.A., Inc. v. Rolex Deli Corp.*, 11-CV-9321, 2012 WL 5177517, at *1 (S.D.N.Y. Oct. 18, 2012) (Jones, J.).

In order to demonstrate copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *accord Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012); *see also* 17 U.S.C. § 106(4) (providing that a copyright owner of a musical work has the "exclusive rights" to "perform the copyrighted work publicly"); 17 U.S.C. § 501(a) (stating that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright"); *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 504 (E.D. Va. 2009) ("[O]ne who publicly performs copyrighted music without permission from the copyright owner thereby infringes the copyright.").

Plaintiffs have sufficiently alleged that Defendants committed copyright infringement, and liability is established by Defendants' default. Plaintiffs state that they are the copyright owners and authorized licensor of the public performance rights of the musical works at issue, (*see* Compl. ¶¶ 20–21, Schedule (listing registration numbers)), and that Defendants publicly performed the musical works without a license or permission, (*id.*). Plaintiffs' investigator visited Katra on June 8 and June 22, 2012, and made audio recordings that reveal that Defendants performed the copyrighted musical works. (Stevens Decl. ¶¶ 11–12, Ex. A). Accordingly, the Court finds liability on the part of Defendants in this default action.

### B. Statutory Damages

Unlike with allegations concerning liability, a party's default "'is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ.*

*& Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158).  On a default judgment motion, "[t]here must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.*

Plaintiffs seek statutory damages of $5,000 for each of the three claims of infringement, pursuant to 17 U.S.C. § 504(c).  (*See* Mot. for Default Judgment).  Section 504(c) permits a copyright owner to elect to recover, instead of actual damages:

> an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c).

The Court has "wide discretion," within the statutory limits, "in setting the amount of statutory damages."  *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1116 (2d Cir. 1986).  In determining the appropriate award of statutory damages, the Court should consider factors such as:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014) (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (Wood, J.)); *see also Fitzgerald Publ'g Co.*, 807 F.2d at 1117.

Defendants were repeatedly informed of the need to obtain permission for public performances of copyrighted music; BMI sent twenty-three letters, telephoned thirty-four times, and visited Katra in-person on three occasions.  (Stevens Decl. ¶¶ 3, 5–9, 13–14, Ex. B).  Defendants,

however, failed to enter into a license agreement with BMI and continued to offer unauthorized public performances of BMI-licensed music. (Stevens Decl. ¶¶ 10, 16).

Courts addressing claims similar to those here have explained that, in order to put infringers "on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees." *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (Grubin, Mag. J., report and recommendation adopted by Baer, J.) (internal quotation and citation omitted). Courts have thus awarded statutory damages that are at least double the unpaid licensing fees. *See, e.g., id.* (collecting cases and awarding $1,500 for each of eight claims of infringement, totaling "approximately five times what BMI license fees would have been plus plaintiffs' investigative expenses," which was "at the upper range of statutory damage awards in similar cases"); *see also, e.g., Broadcast Music, Inc. v. Bayside Boys, Inc.*, 12-CV-3717, 2013 WL 5352599, at *6 (E.D.N.Y. Sept. 23, 2013) (awarding nearly $1,500 for six claims of infringement, totaling "five times the cost of the licensing agreement"); *Realsongs, Universal Music Corp. v. 3A N. Park Ave. Rest Corp.*, 749 F. Supp. 2d 81, 87 (E.D.N.Y. 2010) (awarding $3,000 for each of five claims of infringement, totaling approximately three times the amount of unpaid license fees); *Broadcast Music, Inc. v. 120 Bay St. Corp.*, 09-CV-5056, 2010 WL 1329078, at *2–3 (E.D.N.Y. Apr. 5, 2010) (awarding $4,207.50 for each of seven claims of infringement, totaling "approximately three times the amount plaintiffs would have received in licensing fees if defendants had been properly licensed"); *Broadcast Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (awarding $4,000 for each of ten claims of infringement, totaling approximately two times the unpaid licensing fees for the relevant time period); *Broadcast Music, Inc. v. Barflies, Inc.*, 03-CV-304, 2003 WL 21674470, at *2 (E.D. La. July 16, 2003) (noting that "many courts" use a "multiplier of three to five times the license fee" for determining statutory damages, and awarding approximately four times the license fees owed).

In this case, Plaintiffs assert that, had Defendants entered into an agreement "at the time BMI first contacted them in August 2011, the estimated license fees between August 2011 and July 2013 would have been approximately $5,075." (Stevens Decl. ¶¶ 3, 16 (averring that, as early as August 2011, Katra was offering musical entertainment without permission or an appropriate license)). Plaintiffs' requested award of $5,000 per infringement, for a total of $15,000, is slightly less than three times the unpaid license fees. This is well within the range of statutory damage awards in similar cases and is sufficient to "deter others from calculating that it would be cheaper to violate the copyright laws than to obtain an appropriate license agreement." *R Bar of Manhattan, Inc.*, 919 F. Supp. at 660.

**C. Injunctive Relief**

Plaintiffs request that the Court enter a permanent injunction against Defendants.[2] Section 502(a) of the Copyright Act provides that a court may grant "final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The decision whether to grant or deny injunctive relief "rests within the equitable discretion of the district courts," which "must be exercised consistent with traditional principles of equity." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

---

[2] Plaintiffs request that the Court order that: "Defendants, their agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502." (Mot. for Default Judgment).

7

*Id.* at 391; *see also Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010) (applying the *eBay* standard to a preliminary injunction for alleged copyright infringement, and explaining that "*eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context"); *see, e.g., MPD Accessories B.V. v. Urban Outfitters*, 12-CV-6501, 2014 WL 2440683, at *9–10 (S.D.N.Y. May 30, 2014) (Swain, J.) (granting a motion for a permanent injunction for copyright infringement under the *eBay* standard).  A court must not presume irreparable harm; rather, "plaintiffs must show that, on the facts of their case, the failure to issue an injunction would actually cause irreparable harm." *Salinger*, 607 F.3d at 82.

   Plaintiffs' allegations do not satisfy the requirements for a permanent injunction.  Although Defendants have exhibited an apparent indifference to Plaintiffs' copyrights, Plaintiffs have not shown irreparable injury or a lack of adequate remedies at law.  Harm can be irreparable, and adequate remedies at law lacking, where a copyright holder seeks to prevent the use of his or her work and, absent an injunction, the defendant is likely to continue infringing the copyright.  *See eBay Inc.*, 547 U.S. at 395 (Roberts, C.J., concurring) (noting "the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes"); *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("[I]t has been said that an injunction should be granted if denial would amount to a forced license to use the creative work of another.").  Here, however, Plaintiffs had every intention of authorizing Defendants to use the copyrighted works, had Defendants paid the required licensing fee, (*see* Stevens Decl. ¶¶ 3, 10 (stating that BMI sent Defendants a license agreement and noting that, "[d]espite BMI's efforts, the Defendants failed to enter into a license agreement with BMI")), and Plaintiffs state no other harm from Defendants' infringement.  Plaintiffs' loss (the licensing fee) is plain and easily calculable, and this Opinion and Order requires Defendants to compensate Plaintiffs for this loss three-fold, in addition to attorney's fees and costs.  "[B]ecause monetary injury can be estimated and

compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999); *see also Computer Generated Solutions Inc. v. Koral*, 97-CV-6298, 1998 WL 1085945, at *1 (S.D.N.Y. Dec. 9, 1998) (Mukasey, J.) (finding that plaintiff failed to show a likelihood of irreparable harm in the absence of a preliminary injunction, because plaintiff's claim involved "the mere use of works without paying royalty fees when such works ordinarily would be available in return for payment of such fees," and thus "the only injury plaintiff could conceivably have suffered is monetary injury").[3] *Nimmer on Copyright*, in fact, criticizes the grant of an injunction in a case similar to this one, involving the "performance of three copyrighted songs, which defendant could have licensed." 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.06 (Matthew Bender, Rev. Ed. May 2014) (discussing *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497 (E.D. Va. 2009)).[4] The treatise remarks that:

> Given the ease of computing precise monetary damages [in *EMI April Music*], it is difficult to imagine why remedies at law would be inadequate; further, one is hard pressed to identify irreparable injury, such as damage to plaintiff's goodwill; after all, ASCAP [a performing rights organization similar to BMI] is willing to license an unlimited number of venues in any locale, and would have gladly included defendant in the fold, had only he not been so obdurate.

*Id.*[5]

---

[3] Although "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents," *Brenntag Int'l Chemcials*, 175 F.3d at 250, Plaintiffs have not alleged that Defendants would be unable to pay a monetary judgment.

[4] In *EMI April Music*, the court permanently enjoined the defendant and his employees "from publicly performing, or causing to be performed, or aiding and abetting the public performance of, any and all music in the ASCAP repertory without proper authorization." 618 F. Supp. 2d at 513.

[5] The Court notes that district courts in this circuit have granted injunctions in cases similar to this one. Some of the decisions, however, predate the Second Circuit's instruction in *Salinger* that a court must not presume irreparable harm. *See, e.g.*, *R Bar of Manhattan, Inc.*, 919 F. Supp. at 659. Even post-*Salinger* decisions granting injunctions, *see, e.g.*, *Bayside Boys, Inc.*, 2013 WL 5352599, at *7, may be the product of "the resiliency of hoary mental categories favoring automatic injunctions in copyright cases." 5 *Nimmer on Copyright* § 14.06.

**D. Attorney's Fees and Costs**

1. <u>An Award of Fees and Costs is Warranted</u>

Section 505 of the Copyright Act provides that a court may, "in its discretion," "allow the recovery of full costs," including the prevailing party's "reasonable attorney's fee." 17 U.S.C. § 505. A court deciding whether to award fees and costs may consider, among other things, "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)); *accord Bryant*, 603 F.3d at 144. "[O]bjective reasonableness … should be given substantial weight in determining whether an award of attorneys' fees is warranted." *Matthew Bender & Co., Inc. v. W. Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001).

An award of attorney's fees and costs to Plaintiffs is warranted in this case. Plaintiffs tried diligently to protect their interests without resort to litigation, repeatedly advising Defendants, for approximately one year, that they needed to obtain permission for public performances of copyrighted music. (*See* Stevens Decl. ¶¶ 3, 5–10, 13, Ex. B). Deterrence supports awarding fees and costs here, given Defendants' disregard for Plaintiffs' copyrights; similarly, Plaintiffs should be encouraged to bring suits such as this after continuous, yearlong efforts to enter into a licensing agreement with an infringer have been ignored. Defendants' objective unreasonableness, moreover, is evidenced by their failure to even appear in this suit. *Cf. R Bar of Manhattan, Inc.*, 919 F. Supp. at 660–61 (stating, in a similar case, that "[c]onsiderations of deterrence support an award of attorney's fees to the prevailing parties here, while none of the factors that might justify denying such an award, *e.g.*, the presence of complex or novel issues, a defendant's innocent state of mind, or prosecution of the case in bad faith, is present"); *cf. also Lucerne Textiles, Inc. v. H.C.T. Textiles Co., Ltd.*, 12-CV-5456, 2013 WL 174226, at *5 (S.D.N.Y. Jan. 17, 2013) (Peck, Mag. J.) (noting that a

defendant's default "weighs in favor of awarding attorneys' fees and costs under 17 U.S.C. § 505"), *report and recommendation adopted*, 2013 WL 1234911 (S.D.N.Y. Mar. 26, 2013) (Wood, J.).

    2.   <u>Determination of the Amount of Fees and Costs</u>

Plaintiffs request $7,500 in attorney's fees and $975 in costs.[6] (*See* Second Farrelly Decl. ¶ 4 [Dkt. No. 14]). Courts assess the reasonableness of attorney's fees using a variation on the "lodestar" method that generates a "presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420 (2010). The "presumptively reasonable fee" is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also McDaniel*, 595 F.3d at 420. In determining what constitutes a reasonable fee, a district court has "considerable discretion." *Arbor Hill*, 522 F.3d at 190.

    a.   *Reasonable Rate and Hours Expended*

A reasonable rate is the rate that a "reasonable, paying client would be willing to pay." *Id.* at 184, 190. To assist courts in "stepping into the shoes of the reasonable, paying client," the Second Circuit has outlined a number of "case-specific variables" for courts to consider.[7] *Id.* "[F]or

---

[6] Ms. Farrelly's declaration incorrectly states that the costs total $985, rather than $975. (*Compare* Second Farrelly Decl. ¶ 4, *with id.* Ex. A (invoices listing costs of $350, $595, $5, and $25)).

[7] These variables include the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which are:
>(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3. Other variables are:
>the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected

prevailing parties with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) (noting that "[t]he actual billing arrangement certainly provides a strong indication of what private parties believe is the 'reasonable' fee to be awarded"); *see also Diplomatic Man, Inc. v. Nike, Inc.*, 08-CV-139, 2009 WL 935674, at *6 (S.D.N.Y. Apr. 7, 2009) (Lynch, J.) ("'[T]he reasonableness of an hourly fee may be determined exclusively by 'the rate a paying client would be willing to pay.'" (quoting *Arbor Hill*, 522 F.3d at 190)). A fee movant must submit contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). A district court assessing all submitted time records "should exclude excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Plaintiffs' attorney's fees request is based on a flat rate arrangement that "provides for the payment of fixed fees during different phases of the litigation." (Farrelly Decl. ¶ 3 [Dkt. No. 9]).[8] Plaintiffs were billed a flat fee of $7,500 in this case. (*See* Second Farrelly Decl., Ex. A). Catherine M.C. Farrelly (formerly known as Catherine M. Clayton) is lead counsel for Plaintiffs and is the head of the trademark and copyright practice at Gibbons P.C. (Farrelly Decl. ¶ 5; Second Farrelly Decl. ¶ 3). Ms. Farrelly has practiced for fifteen years, and she states that her current hourly rate is $570. (Farrelly Decl. ¶¶ 5–6). Two other timekeepers worked on this matter: Martin Brech, the Managing Clerk & Paralegal Supervisor for Gibbons, who has approximately thirteen years of experience as a Managing Clerk, and Margaret Curcio, an assistant and paralegal at Gibbons with two years of

---

low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.
*Id.* at 184.
[8] This declaration was submitted prior to Ms. Farrelly's name change and is titled "Declaration of Catherine M. Clayton." The Court will refer to it as the Farrelly Declaration.

copyright litigation paralegal experience. (*Id.* ¶¶ 7–9). Mr. Brech's hourly rate is $200, and Ms. Curcio's hourly rate is $160. (*Id.*). Plaintiffs' counsel has submitted invoices sent by Gibbons to Plaintiffs, which include records stating the date, description of services rendered, and time spent. (Second Farrelly Decl., Ex. A). Based on these records, Ms. Farrelly spent 8.7 hours on this matter, Mr. Brech spent 2.4 hours, and Ms. Curcio spent .7 hours. (*Id.*).

Ms. Farrelly's, Mr. Brech's, and Ms. Curcio's hourly rates are within the range of hourly rates approved by other courts in this district for similarly experienced attorneys and paralegals. *See, e.g., Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc.*, 13-CV-2548, 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (Wood, J.) (collecting cases and accepting rates of $785 and $485 for two experienced attorneys, and $200 for a paralegal); *Pyatt v. Raymond*, 10-CV-8764, 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (McMahon, J.) (collecting cases approving rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (Marrero, J.) (finding partner and associate rates of $735 and $445, respectively, reasonable); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08-CV-6030, 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (Katz, Mag. J., report and recommendation adopted by Lynch, J.) (approving $650 and $600 hourly rates for partners specializing in intellectual property litigation and $195 hourly rate for a paralegal); *Diplomatic Man, Inc.*, 2009 WL 935674, at *5–6 (finding rates of $650 per hour for a partner and $200 per hour for a paralegal in a New York firm reasonable). The Court has reviewed the invoices submitted by Plaintiffs' counsel and has determined that the hours spent are reasonable. *Cf. Realsongs, Universal Music Corp.*, 749 F. Supp. 2d at 92 (finding that 14.9 hours spent by plaintiffs' counsel in a similar case were reasonable); *cf. also Bayside Boys, Inc.*, 2013 WL 5352599, at *9 (same for 7.9 attorney hours and 2 paralegal hours).

Had Plaintiffs been billed at an hourly rate, rather than pursuant to the flat fee agreement, the fees in this matter would have been approximately $5,550. The billable fees would have exceeded the flat rate of $7,500, however, had Ms. Farrelly spent an additional three and a half hours on this matter (keeping Mr. Brech's and Ms. Curcio's hours constant).

Although the flat fee arrangement in this case resulted in higher fees than would have been charged based on billable hours, it appears to have been a reasonable *ex ante* approximation of the value of Plaintiffs' counsel's work on this matter. *Cf. CSC Holdings, Inc. v. Khrisat*, 04-CV-8592, 2005 WL 3030838, at *5 (S.D.N.Y. Nov. 8, 2005) (Ellis, Mag. J.) (finding flat rates reasonable where "contemporaneous time records sufficiently detail[ed] the attorney or paralegal who performed the particular tasks noted, the date upon which the tasks were performed, and the nature of the tasks performed"), *report and recommendation adopted*, Dkt. No. 7 (S.D.N.Y. Jan. 18, 2006) (Sand, J.). *But cf. Cablevision Sys. New York City Corp. v. Landron*, 02-CV-2957, 2003 WL 430347, at *4 (S.D.N.Y. Jan. 21, 2003) (Eaton, Mag. J., report and recommendation adopted by Kaplan, J.) (refusing to award flat fees where the attorneys failed to keep contemporaneous time records). Because the flat fee is what a "paying client" has agreed to pay in this case, *Arbor Hill*, 522 F.3d at 184, 190, providing a "strong indication of what private parties believe is the 'reasonable' fee to be awarded," *Crescent Publ'g Grp., Inc.*, 246 F.3d at 151, and in light of the experience of the attorney and paralegals and the positive result obtained, the Court finds the requested rate reasonable.

    b.   Costs

Plaintiffs seek $975 in costs, which consist of $350 for filing fees, $595 for service fees, $5 for travel, and $25 for messenger services. (*See* Second Farrelly Decl., Ex. A). These are routine costs that are typically awarded. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (stating that attorney's fees awards include reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to clients); *see, e.g., GAKM Res. LLC*, 2009 WL 2150891, at *10 (noting that

14

filing fees, service fees, and transportation expenses are "the types of routine costs awarded to prevailing parties in trademark and copyright infringement actions").  Accordingly, Plaintiffs' request for costs is granted.

## III.   CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion and enters default judgment against Defendants.  Plaintiffs are awarded:

- statutory damages in the amount of $15,000, which represents an award of $5,000 for each of the three (3) acts of infringement, pursuant to 17 U.S.C. § 504(c);

- reasonable attorney's fees of $7,500 and costs of $975, totaling $8,475, pursuant to 17 U.S.C. § 505; and

- post-judgment interest on these awards, pursuant to 28 U.S.C. § 1961.

The Clerk of Court is directed to close this case.  Any pending motions are moot.

SO ORDERED.

Dated:  New York, New York
          June 19, 2014

_____/s/_____
Kimba M. Wood
United States District Judge